LOUIS MANLEY, et al., v. CITY OF ATCHISON.

1. CITY TREASURER; Contract; Use of City Funds for Private Purposes. A contract made between the mayor and council on one side, and the city treasurer on the other, that the treasurer may use the funds of the city and pay a percentage therefor, is illegal and void, and does not authorize the treasurer to so use the funds. Nor does the fact that such contract was made at the time of the appointment of the treasurer, and kept from the knowledge of those persons who became the sureties on the bond of the treasurer, lessen the liability of such sureties.

2. TREASURER'S BOOKS; Evidence. Where a record is kept in a book, of the funds received and paid out by a city treasurer, and the different funds are kept separate, such book is the best evidence of what funds are in the hands of the treasurer; and in the absence of proof of loss of such book, or that it was falsely kept, or some other sufficient legal cause for its non-production, the city will not be allowed to prove by verbal testimony the amount of any particular fund in the hands of the treasurer.

### Error from Atchison District Court.

THE City of Atchison, as plaintiff, brought an action against Frank Smith, Louis Manley, Samuel C. King, John A. Martin, John M. Price, and P. H. Wilbor. Smith and Wilbor were not served, and did not appear. The petition alleged that

---

[* No second trial was had. The case being remanded, the City of Atchison offered to pay the amount of the judgment from which it had appealed, ($450,) and all costs, which the administrator accepted, and the case was so settled.—REPORTER.]

Smith was treasurer of the city of Atchison from April 30th 1868 to February 1869, when he resigned; that he refused to settle his accounts as such treasurer, and pay over to his successor the moneys in his hands, etc. The other defendants were sureties in the official bond of Smith, and judgment was demanded for the recovery of the several funds withheld by Smith, (designating the respective funds, and the amount of each,) amounting in the aggregate to $6,122.15. The official bond, sued upon, contained the condition, that "if the said Smith shall well and truly and faithfully discharge the duties of said office, and shall account for and pay all moneys or property coming into his hands by virtue of said office, according to law, and the charter and ordinances of the city of Atchison, then this obligation to be null and void, otherwise to remain in full force and virtue." The sureties served answered—first, a general denial; second, that Smith was not legally school treasurer, and their suretyship extended only to the city funds proper, and not to the school funds; third, that Smith's appointment was upon an unlawful agreement between Smith and the mayor and council that Smith might use the public moneys coming into his hands in his private business, and that he did so use the said moneys with the knowledge and consent of the mayor and council, and without the knowledge or consent of his sureties. The action was tried at the November Term 1871. Certain evidence offered by plaintiff was excluded, and certain other evidence offered by defendants was also excluded. Both parties excepted, and each settled a bill of exceptions. The jury returned a verdict in favor of the city for $2,784.66. Each party moved for a new trial, which was refused; and judgment being given on the verdict, each party brings the case here on error for review. Both appeals were heard together, and decided together. The defendants below are designated as "plaintiffs in error," and *vice versa*.

*J. J. Ingalls*, and *C. G. Foster*, for plaintiffs in error:

1. The evidence offered to show the liability of plaintiffs in error for the school funds was properly rejected. The bond sued

on was a contract with the city; and Smith and his sureties were accountable under the bond only for money or property coming into his hands "according to law and the charter and ordinances of the city of Atchison." The city had no control over the school funds, and no authority to take a bond, or perform any other act in relation to them, except to levy and collect the tax reported by the board of education. Ch. 19, § 78, Gen. Stat. The board of education had the exclusive charge of the school funds, under an entirely distinct and separate organization for purposes specified and defined by law. See said ch. 19, art. 5, *passim.* The board of education had a treasurer of its funds, whose duties were prescribed by law, (ch. 19, § 63;) and the fact that this treasurer was the same person who held the office of city treasurer, did not change his obligations or responsibilities to the board of education in relation to the funds belonging to them, and placed in his charge. The ordinance defining the duties of the treasurer shows that the city did not contemplate any liability on the part of the treasurer for the school moneys. It was the duty of the board of education to demand a bond from the treasurer for the faithful performance of his duties as treasurer to the board: § 63, *supra.*

The bond must be construed strictly in favor of the sureties. The law as it existed at the time entered into and formed a part of their contract, and they contracted with reference to it. 5 Kas., 22; 16 Ohio St., 17; 6 Jones (Law,) N. C., 62.

2. It was error to reject the testimony offered by plaintiffs in error to prove the contract between Smith and the mayor and council, and that Smith was appointed city treasurer pursuant to such contract. Said contract and appointment were in direct violation of the law, and the ordinances of the city.

The sureties contracted in reference to the law as it existed at that time. It entered into their contract and they had a right to rely upon it: 5 Kas., 22. One who becomes surety for another is presumed to do so in the belief that the transaction between the principal parties is one occurring in the

usual course of business of that description, subjecting him only to the ordinary risks attending it. To receive a surety acting upon this belief, the party receiving him knowing there are other circumstances, having suitable opportunity to make them known, but withholding them, is a legal fraud, by which the surety will be relieved from his contract: 36 Maine, 179. Facts known to the other party, and not known to the surety, of a character to materially increase the risk beyond that assumed in the ordinary course of business, and not communicated, entirely discharge the surety, (36 Maine, 562,) though it may still be binding on the principal: 9 Ala., 42. Misrepresentation or concealment of any material fact avoids contract of suretyship: 39 Maine, 532.

The contract between the city and Smith, the treasurer, was not in the usual course of business of that description. The use of the funds of the city by the treasurer in his own private affairs upon an interest of seven per cent., increased the risk ordinary to such a transaction. The agreement that the treasurer should receive for his services no compensation other than the use of the money, shows that the intention was to violate the law. The arrangement was secretly made in executive session, and was known to the mayor and council of the city. It was not communicated to the sureties upon the bond. They knew nothing about it, and under the law and the authorities they should be discharged.

*D. Martin,* and *W. W. Guthrie,* for defendant in error:

1. It was not competent for plaintiffs in error to prove that Smith was appointed city treasurer upon an agreement that he should allow the city interest on all current funds in his hands, and receive no compensation for his services, and that such contract was unknown to them when they executed the bond as Smith's sureties. Such proof, if made, would not affect the question of their legal liability, and it was no error to reject it.

The city can only act through the mayor and council in appointing a treasurer; (Gen. Stat., 159, 160, § 28.) The

mayor and council had no authority to make such a contract as is implied in the questions asked. The law did not authorize it, and the ordinance of the city expressly forbade it. And if the mayor and council had undertaken to make such a contract, it would have been void, and the city would not have been bound thereby. Yet, if such agreement had even been inserted in the bond, though that part of the bond would be void, yet it would not invalidate the other conditions of the bond. 12 Wheat., 136; 5 Pet., 373; 10 Pet., 360; 8 Smedes & Mar., 151.

But the plaintiffs in error are estopped by their deed from setting up any such defense as is indicated by said questions. It is recited in the bond that "Frank Smith was duly appointed as treasurer of the city of Atchison, * * * in accordance with law, and the ordinances of the city of Atchison, and is about to enter upon the discharge of the duties of said office for the ensuing term." 10 Peters, 365; 2 Smith's Lead. Cas., 609. Again, whatever negotiations were made before the execution of the bond, were concluded by and merged in it. 12 East, 6; 6 Ohio St., 1; 7 Cush., 268. The obligation of the bond depends upon its words, and not upon extraneous circumstances. 11 Wheat., 186; 3 How., 587; 17 Ohio, 565; 6 Ohio State, 607. The mayor and council had no authority to bind the city by such an agreement. The city could not therefore consent to the use of the public funds by the treasurer. The ordinance forbade it. 2 Kas., 357, 371.

2. Smith's official bond was given April 30th 1868, and the liability accrued prior to Feb. 9th, 1869. The one question is: As the law then stood, were the school funds "city taxes"? Or, did the city treasurer, by virtue of his office, receive those moneys? Ch. 19, Gen. Stat. 1868, provides for the organization of cities of the second class. In the city council alone is vested the authority to divide the city into school districts, (§ 14,) and to levy all school taxes; (§ 67.) The title to school property vests in the city, (§ 70,) and is sold only by the city, (§ 71.) The moneys arising from such

sales are invested only by the city, (§ 78,) and its repayment is secured by a lien on the school property of the city, (§ 81.) All school fund taxes are paid only to *city* treasurer, §§ 68,. 78. All these things are acts of city officers, as *city* officers; and these funds must be city funds devoted to a specific purpose. *Jackson Co. v. Craft*, 6 Kas., 145, seems to settle this case for defendant in error.

The board of education was not a body of any authority—only an advisory body, like an overseer of poor; unlike a school district board, which might levy a tax, (§ 70, ch. 107, Gen. Stat., 1043,) own property, convey, sue and be sued, etc. That the board of education were powerless to act, but only as an advisory board, see §§ 67 to 71, 78, of said ch. 19 of Gen. Stat. Smith held but one office, that of "city treas-urer," and his bond was given for the faithful performance of its duties, and this included the collection and proper custody of the school funds: §§ 61, 68, ch. 19, *supra.*

But it is said that by § 63 another office is created, and another bond to perform its duties required. Not so. Only certain specific duties are required from the city treasurer for which further security "may be required to perform his duties as treasurer to said board." What duties? Not to collect taxes for the benefit of schools—these were placed in his hands as city treasurer by § 68. Not to collect interest—it was to be "paid into the city treasury," by § 78. But as "treasurer to the board" he had to attend meetings, submit reports, etc., not required of him as city treasurer.

The law holds public officers on grounds of public policy to a strict accountability, and equally so their sureties: 6 Ohio St., 607; 3 How., 578; 11 How., 154; 15 Peters, 187. The city treasurer was sued on his bond as city treasurer for money not accounted for, that came into his hands by virtue of his office as such treasurer. Can he avoid payment? If not, neither can his sureties.

The opinion of the court was delivered by

KINGMAN, C. J.: The plaintiffs in error are sued as sureties of Frank Smith in his bond as city treasurer of the city

of Atchison. The bond is dated April 30th 1868. On the 13th of said April the city council of that city appointed said Smith city treasurer upon his agreement to pay seven per cent. interest on all current funds in his hands, and make no charge for his services, all which appears on the journals of the council of that date. The ordinances of the city of Atchison at that time expressly prohibited the city treasurer from using the public moneys or orders in his keeping or custody for his own use or benefit, and gave him a salary of $200 per annum for his services. On the trial the defendants Manley, King, Martin, and Price, sureties on the bond, offered to prove "that the mayor and council of the city of Atchison allowed Smith to use the funds of the city in his own private business under an agreement that he should pay seven per cent. interest per annum for all current funds in his hands, and make no other charge for his services, and that he was appointed treasurer in consideration of this agreement on his part to pay interest and make no further charge, which facts were not communicated to defendants Manley, Martin, King, and Price, when they signed the treasurer's bond; that this action was had by the mayor and council in executive session; that said defendants had no knowledge of such a contract, and that had they been informed of the facts they would not have signed the bond." The plaintiff objected to the intro- duction of this evidence, and the court sustained the objection; and this action of the court constitutes the only question pre- sented by the plaintiffs in error in this case.

Was this testimony admissible? It presents the question of whether the illegal acts of one class of a city's agents so excuses the illegal acts of another agent of the city as that the sureties on a bond given for the faithful performance of his duties by the latter are thereby released. The mayor and council of a city are but the officers and agents of the city, with defined powers. Acting within the limits of these powers their acts are binding, however unwisely and impru- dently their action may be. Outside the powers confided to them their acts are, as to the city, null and void. The con- tract which the rejected evidence was proposed to prove, was

one the mayor and council had no power to make. This is plain from the ordinance referred to. It would be no less certain if no such ordinance existed. The funds are collected for public purposes. The mayor and council had no right and no power to use them for any other purpose. They could not convert the city into a banking concern, or become auxiliary to any such scheme, by a direct or indirect use of the public funds for such purpose. Their duty was to administer the funds raised for public objects so as to promote those objects alone. It was also the duty of the treasurer to safely keep the funds sacred for those public purposes only. He had no right to use a dollar for private gain. He got his power by his appointment; but his duties were defined by law, and were not a subject of bargain and trade between himself and the mayor and council. Their consent or agreement that he should use the funds in his business gave him no right so to do. An illegal contract could not enlarge the power of the city treasurer; neither could it limit his responsibility. That the illegal contract was made with the other agents of the city does not change the principle, nor alter the duties and obligations of the treasurer. They remained the same, and were defined by law. Any other conclusion would lead to endless confusion, and often end in ruin to cities. The whole fallacy of the argument of the plaintiffs in error lies in confounding the mayor and council of a city with the city itself. Although their powers are greater, they are no more the city than is the city marshal, or the city attorney; and either of these officers would have had as much right to make a contract with the treasurer, such as was attempted to be proven in this case, as had the mayor and council; and a contract with either would have been as valid and binding. The contract or agreement sought to be proven in nowise lessened the obligation of the treasurer; neither did it affect the liability of his sureties. Testimony to prove it was therefore properly excluded. This view settles the points made on the instructions.

II. The city of Atchison also files its petition in error in

this case, and asks the court to correct a certain ruling of the court below made to its prejudice. The record shows that the city gave in evidence testimony tending to make out its case, and then introduced Mr. Garside as a witness, who testified that he succeeded the said Smith in the office of city treasurer, and upon February 23d 1869 entered upon the duties of said office, and on said day made demand as such city treasurer upon said Smith as late city treasurer to turn over to him the city funds then in his hands, and settle therefor. "And then plaintiff offered to prove, by said witness, that at said time the said Smith as such late city treasurer had in his hands certain funds belonging to the said city of Atchison for the benefit of its public schools, which had been placed in his hands as such city treasurer, and *ex officio* treasurer of the board of education, for the benefit of the schools in said city between July 1st 1868, and February 9th 1869, and then had remaining in his hands as such city treasurer, of said funds, the sum of $2,055.52, known as 'school fund,' and the sum of $1,593.81, known as 'interest on school bonds.' To the introduction of this evidence defendants objected, which objection was sustained by the court." This ruling of the court is the only error complained of by defendant in error, and the record in this matter is literally quoted because a question was elaborately argued in this court which is not raised by the record. What the objections were, that were raised in the court below, we are not informed by the record. The evidence was rightfully excluded. The best evidence is always required. This rule is fundamental. It appears from the ordinance of the city, made a part of the record, that it is the duty of the treasurer "To keep in suitable books a full and accurate account of all moneys received by him on behalf of the city, specifying the time of disbursement, from whom received, to whom disbursed, and on what account received and disbursed." This book would be the best evidence of the facts sought to be proven by the witness Garside, and this evidence the city should have offered. There is no showing that the books were not in the custody

of the treasurer, nor any testimony that they had not been correctly kept. This court will on this ground be compelled to sustain the ruling of the court below; and it is of no importance to this action what may be the views of this court on the question argued, and that is this: Is the city treasurer liable on his bond, as such, for moneys that come into his hands belonging to the school board?

The judgment is affirmed. The costs of this court to be equally divided.

All the Justices concurring.