## EX PARTE RAILROAD COMPANY.

1. Where the final decree of the Circuit Court is inconsistent with an interlocutory decree granting affirmative relief upon a cross-bill in the same suit, a party adversely affected by such final decree, where the matter in dispute is sufficient, has a right to appeal to this court, which, if withheld, may be enforced by *mandamus*.

2. An assignment by a defendant of his interest in the subject-matter of a pending suit does not necessarily defeat the suit. The assignee is bound by what is done against the assignor; and may either come in and assume the burden of the litigation in his own name, or act in the name of his assignor.

PETITION for a writ of *mandamus* to the Circuit Court of the United States for the Middle District of Alabama.

The facts important to the determination of this case are as follows : —

The Montgomery and Eufaula Railroad Company, in 1860, borrowed $30,000 from the State of Alabama, and executed a mortgage upon its property and franchises to secure the payment. Afterwards, the State indorsed bonds of the company to the amount of $1,280,000, and a statutory lien was created upon the same property and franchises as further security for the bonds. In 1870, the company issued a series of bonds to the amount of $500,000, and secured the payment of them by a deed of trust upon the same property.

Default having been made in the payment of the interest upon the last-named bonds, Samuel A. Strang, claiming to be the holder of some of them, filed May 10, 1872, a bill for the foreclosure of the mortgage, in the District Court of the United States for the Middle District of Alabama, then possessing circuit court powers. To this bill, the trustees named in the mortgage, the railroad company, and one of its judgment creditors, were alone made parties. No mention was made of the

first mortgage to the State. On the 17th January, 1874, the South and North Alabama Railroad Company was, upon its own petition, admitted as a defendant in the suit, with leave to answer and file a cross-bill. In its answer it set forth its ownership of the $30,000 mortgage to the State, and insisted upon the priority of its security; and, in the cross-bill, prayed a sale of the mortgaged property, for the purpose of paying the debt:

On the 1st of April, 1875, Mason Young and others, claiming to be the owners of certain of the bonds secured by the statutory lien, filed a bill in the Circuit Court of the United States for the Middle District of Alabama to enforce that lien. To this bill the Montgomery and Eufaula Railroad Company, the South and North Alabama Railroad Company, and the trustees under the Strang mortgage, were made parties. The South and North Alabama Railroad Company answered, setting up its lien, and asking that it might be enforced as superior to that of any other claimants. In the answer, it was stated that, on the 20th April, 1876, the company had transferred its claim to the Louisville and Nashville Railroad Company. In June, 1876, the Strang suit was, by operation of law, transferred to the Circuit Court of the United States for the Middle District of Alabama.

After this transfer, the Strang and Young suits, with the cross-bill, were submitted to the court upon the pleadings, proof, and admissions of the solicitors for the determination of the question, whether the mortgage claim of the South and North Alabama Railroad Company was paramount and superior to the other claims and liens asserted and disclosed in the pleadings of the other parties to the several causes; and, upon this submission, the court decided in favor of that company, finding the amount due to be $61,212, and entered an interlocutory decree to that effect, reserving all further questions. At a subsequent term, on the 6th of June, 1877, each of the several causes came on to be heard upon the prayer of the cross-bill of the South and North Alabama Company, for an order to sell the mortgaged property, and pay its debt out of the proceeds, and upon the motion of the several complainants in the original bills for a reference to ascertain the amount due for costs, solicitors' fees, and outstanding unpaid receiver's certificates. Upon

this hearing, a decree was entered in each of the suits directing the sale, as asked for, and the application of the proceeds to the payment of the claim of the Alabama Company in preference to that of the other mortgage creditors. From these decrees Young and his co-complainants appealed, and filed the necessary bond for a *supersedeas;* but at the same term, and the next day after the appeal was taken, the court again considered the cause, upon the motion of those holding claims adverse to that company for a decree settling their equities as between themselves, and directing a sale of the property subject to the claim or lien of that company, " to the end that this litigation, except in so far as it concerns the South and North Alabama Railroad Company, may be terminated; " and it appearing to the court that the parties to such motion were entitled to a decree as to their several equities as between each other, the two suits of Strang and Young were consolidated, and a decree was rendered, July 3, 1877, settling the equities of the parties, exclusive of the Alabama Company, ordering a sale of the property, subject to the lien of that company, and directing that the purchaser take title subject to such lien, as the same might finally be adjudicated and determined. It was also adjudged that all the rights and equities of that company should remain the same in all respects as if that decree had not been rendered, such company "not being a party to the submission, and, in the opinion of the court, as a matter of law, not a party to the decree, although appearing and claiming to be a party, and insisting upon the right as a party to object thereto."

On the same day with the rendition of this decree, the South and North Alabama Company prayed an appeal to this court to operate as a *supersedeas* upon the filing of the necessary bond; but the court refused to grant the appeal or accept a bond, being of the opinion that the company had no right to appeal, or to supersede the execution of the decree.

The South and North Alabama Railroad Company now petitions for a *mandamus* requiring the Circuit Court to grant the appeal and accept a good and sufficient *supersedeas* bond.

*Mr. Thomas G Jones* for the petitioner.

The decree of July 3, 1877, is final, and the petitioner, as a party to the suit, had the right to an appeal to this court. *Stovall*

v. *Banks*, 10 Wall. 583; *Railroad Company* v. *Bradleys*, 7 id. 575; *The Douro*, 3 id. 564; *United States* v. *Adams*, 6 id. 101; *Ex parte Jordan*, 94 U. S. 248; Phillips's Practice, 76–81.

The assignment of the debt by the petitioner to the Louisville and Nashville Railroad Company did not take away that right. *Partridge* v. *Partridge*, 38 Pa. St. 78; *Adams* v. *Parker*, 12 Gray (Mass.), 53; *Warden* v. *Adams*, 15 Mass. 233; *Smith.*v *Kelley*, 27 Me. 237; *Lyford* v. *Ross*, 33 id. 197; *Crinion* v. *Nel on* 7 Mo. 466; *Davies* v. *Austin*, 1 Ves. 247; Thomas on M rtsages, 104; Story, Eq. Pl., sects. 156, 351.

The appeal having been improperly denied, *mandamus* is the proper remedy. *United States* v. *Gomez*, 3 Wall. 752; *Ex parte Jordan*, *supra; Life and Fire Insurance Company of New York* v. *Adams*, 9 Pet. 571.

*Mr. D. S. Troy, contra.*

The appeal was properly denied. *Simpson* v. *Greeley*, 20 Wall. 152; *Stratton* v. *Jarvis & Brown*, 8 Pet. 4; *Neal* v. *Singleton*, 26 Ark. 491; *Combs* v. *Jefferson Pond Draining Co.*, 3 Metc. (Ky.) 72; *Strong* v. *Winslow*, 3 Chand. (Wis.) 21; *Amery* v. *Amery*, 26 Wis. 152; High, Extraordinary Remedies, sects. 8–10.

The petitioner having assigned its debt, and thus transferred its interest in the subject-matter in controversy, lost any right it might otherwise have had to an appeal. Story, Eq. Pl., sects. 156, 349, 351, 352; Mitford & Tyler, Eq. Pl., p. 164; *Mills* v. *Hoag*, 7 Paige (N. Y.), Ch. 18; *Card* v. *Bird*, 10 id. 427; *People* v. *Wilson*, 26 Cal. 127; *Griggs* v. *Detroit*, 10 Mich. 117; *Solomon* v. *Solomon*, 13 Sim. 516; *Johnson* v. *Thomas*, 11 Beav. 502.

Moreover, its lien, whatever it might be, was expressly saved from the operation of the decree.

Mr. Chief Justice Waite delivered the opinion of the court.

This petition for a *mandamus* is resisted, upon the general ground that the South and North Alabama Railroad Company cannot appeal, because its rights are not injuriously affected by the decree. That company was a party to each of the suits consolidated for the purposes of the decree. It was, therefore, a

party to the consolidated suit, and entitled to be heard upon the pleadings as they stood before the consolidation, since no change in that particular was ordered or deemed necessary by the court. Among the pleadings in the Strang suit, thus brought into the consolidated suit, was the cross-bill of this company praying affirmative relief in the final determination of the cause. It matters not that at a former day in the term a special decree had been rendered upon the subject-matter of the cross-bill, and that an appeal from that decree had been taken; for "a cross-bill is a mere auxiliary suit and a dependency of the original." *Cross* v. *De Valle*, 1 Wall. 5. As we have said in *Ayres et al.* v. *Carver et al.*, 17 How. 591, "both the original and cross-bill constitute one suit," and ought to be heard at the same time. Consequently, "any decision or decree in the proceedings upon the cross-bill is not a final decree in the suit, and . . . not the subject of an appeal to this court. . . . The decree, whether maintaining or dismissing the bill, disposes of a proceeding simply incidental to the principal matter in litigation, and can only be reviewed on an appeal from the final decree disposing of the whole case. That appeal brings up all the proceedings for re-examination, when the party aggrieved by any determination in respect to the cross-bill has the opportunity to review it, as in the case of any other interlocutory proceeding in the case." A cross-bill must grow out of the matters alleged in the original bill, and is used to bring the whole dispute before the court, so that there may be a complete decree touching the subject-matter of the action. 2 Daniell, Ch. 1548. The South and North Alabama Company deemed it necessary, for the protection of its rights in the mortgaged property, that in any sale which might be ordered provision should be made for the payment of its claim out of the proceeds, insisting, for that purpose, that its lien was prior in time to that of either of the other mortgage creditors. To accomplish this, a cross-bill was necessary, and it was accordingly filed. The decree upon this bill being, under the ruling in *Ayres* v. *Carver*, interlocutory only, was superseded by that of July 3, which finally disposed of the cause in a manner entirely inconsistent with its provisions. It is clear, therefore, that the decree as rendered did, in effect, deny the company

the relief it asked, and that, if there were nothing more in the case, redress might be had by an appeal.

But it is claimed that, as in the answer of the South and North Alabama Company to the bill of Young, it was stated that pending that suit, and consequently pending that of Strang and the cross-bill, the company had assigned its debt, it had now no right to insist upon affirmative relief in the action, and, therefore, could not appeal. In both the suits it was a defendant against whom relief was asked. It defended against the claims of the several complainants, and, as an incident to that defence, sought to obtain protection for its own rights. It is well settled that an assignment by a defendant of his interest in a litigation does not necessarily defeat a suit. His assignee taking *pendente lite* is bound by what is done against him. The assignee may, at his own election, come in by an appropriate application, and make himself a party, so as to assume the burden of the litigation in his own name, or he may act in the name of his assignor. A *pendente lite* assignment carries with it an implied license by the assignor for the use of his name in the cause by the assignee to protect the rights assigned. Of this, the plaintiffs in the action cannot complain, because the assignee is bound by all that is done, whether a party by name or not. Acting upon this principle, notwithstanding the statement in the answer, the company has all the time, in the whole course of the subsequent proceedings, been treated as the representative of the interest of its assignee. Subsequent to the answer, and during the May Term, 1876, the cause was submitted by consent of all parties for decision and decree upon the question whether the mortgage claim or lien asserted and disclosed in the answer and cross-bill in the Strang suit and in the answer in the Young suit was, and still continued to be, paramount and superior to the claims and liens of the other parties. Upon this submission, the court found that the lien was paramount, and entered an interlocutory decree to that effect. In addition to this, on the 6th June, 1877, the parties stipulated, for the purposes of evidence in the cause, that the South and North Alabama Company was the owner of the bonds and the mortgage to secure them. It is thus apparent that, for the purposes of the suit, by the understanding of all the parties,

that company represented the claim which was being enforced in its name, and was entitled to take such steps as might be deemed necessary for the protection of those in whose behalf it was acting.

A writ of *mandamus* may issue directing the circuit judge, or the Circuit Court of the United States for the Middle District of Alabama, to allow the appeal prayed for as of July 3, 1877, and, upon the allowance of the appeal, to accept as of the same date good and sufficient security for a *supersedeas* if offered; and it is                                          *So ordered.*