# SUPREME COURT OF TENNESSEE,

12L 215
14L 252

FOR THE

# MIDDLE DIVISION,

NASHVILLE, . . . . . . . . DECEMBER TERM, 1883

---

EDNEY PAUL *v.* W. H. WILLIAMS.

1. ASSIGNOR AND ASSIGNEE. *Suit by assignee.* The assignee of land the subject-matter of a pending litigation, may either carry on the suit in the name of the assignor, or come in by an original bill in the nature of a supplemental bill, and conduct the litigation in his own name, in which case the bill will be merely a continuation of the first suit.

2. SAME. *Purchaser of assignor's interest without notice.* The opposing litigant might purchase the assignor's interest in the land before notice, actual or constructive, of the first assignment, but not afterwards, so as to acquire an estate or equity superior to the estate or equity of the first assignee.

3. SALE, JUDICIAL. *Purchaser. Equity of redemption. Improvements. Rents.* A purchaser at a judicial sale of land subject to redemption, who puts improvements on the land with the consent of the party owning the equity of redemption, will be entitled to his improvements to the extent that they have permanently enhanced the value of the land, subject to account for the rents and profits.

---

FROM FENTRESS.

---

Appeal from the Chancery Court at Jamestown. S. B. NORTHRUP, Sp. Ch.

J. D. GOODPASTURE and J. P. MURRAY for complainant.

HENRY GIBSON and DEMOSS & MALONE for defendant.

COOPER, J., delivered the opinion of the court.

The original bill in this protracted and complicated litigation was filed October 21, 1865, to foreclose a trust deed of land made by W. H. Williams to secure a debt due from him to the complainant, Edney Paul. Such proceedings were had, that on December 4, 1866, a decree was rendered, upon a *pro confesso* order, ascertaining the amount of the complainant's debt against the defendant, and ordering the land to be sold in satisfaction thereof, on time free from the equity of redemption. On February 4, 1867, the land was sold under the decree to one Beaty, the assignee *pendente lite* of the complainant's debt, who transferred his bid to J. F. Paul. The sale was confirmed in the name of J. F. Paul on December 3, 1868, to whom the land was afterwards, on September 17, 1869, conveyed by the clerk in conformity with the decree. Upon the application of Williams as a non-resident of the State, after the confirmation of the sale, he was permitted to file an answer and cross-bill in which he claimed credit for money paid on the trust debt, and asked to be permitted to redeem the land upon a tender of the purchase ·money with interest. Beaty and J. F. Paul, as well as the original complainant, were made defendants in this cross-bill. The chan-

cellor dismissed the cross-bill upon the hearing, the defendants thereto having admitted and allowed the credit claimed. Upon a writ of error sued out by Williams, this court reversed the chancellor's decree, and, without interfering with the validity of the sale to J. F. Paul, held that Williams was entitled to redeem the land, upon the ground that a sale free from the equity of redemption was not asked for in the original bill nor by the complainant at the hearing. The case was remanded with directions to ascertain the balance of the complainant's debt, to take an account of the rents and profits of the land while in the possession of the purchaser, and to deduct the one sum from the other. If the balance was found against Williams, he was to be required forthwith to pay this balance to J. F. Paul in redemption of the land. If the balance was found to be in favor of Williams he was to have a decree therefor. Upon the remand, the decree of this court was entered on the minutes of the chancery court, and a reference made which went beyond that decree in ordering an account of improvements put upon the land by the purchaser. Neither this decree of reference, nor the report of the clerk thereon need be further noticed, for they were ignored by the parties in the court below, and another decree of reference and report made, upon additional pleadings, which were acted upon.

On April 5, 1875, J. F. Paul filed a bill in the nature of a cross-bill against Williams, Beaty and Riley Long, the main object of which was to recover the value of the improvements put by him on the land

.after his purchase. On December 3, 1875, he filed, by leave of the court, an amended bill against the same parties for the same purpose, and seeking also to dismiss Williams' cross-bill on the ground of champerty. This amended bill charged that after J. F. Paul had been put in possession of the land under his .purchase, the defendant, Riley Long, had purchased the land from Williams, and was prosecuting the suit in Williams' name for his, Long's, benefit. It further alleged that the improvements put upon the land by .J. F. Paul were made after his purchase with the knowledge and approval of Long, and while he was in control of the Williams' suit, and prosecuting it for his own benefit. In his answer to this bill, Long says that he bought the land from Williams on December 18, 1866, and before the sale to complainant Paul; that Paul went into possession of the land before the sale as the tenant of Williams, and continued in the possession afterwards as his, Long's, tenant. And he admits that under these circumstances he "directed him, Paul, to continue the construction of the mill then being built on said land."

In January, 1876, J. F. Paul went to the residence of Williams in Kentucky, and took a conveyance from him of the land in controversy. And upon March 4, 1877, on the strength of this purchase, he moved the court to dismiss the cross-bill of Williams under which this court had sustained the right of Williams to re-deem. The chancellor refused the motion, as well as a similar motion on the ground of champerty, but he permitted Paul to bring the fact of his purchase before

the court by a plea of *puis darrein continuance.* The several causes were consolidated at the same time, and a decree entered commencing as follows: "The parties desiring an early settlement of the questions in the cause mutually agree that it be referred to the master to state an account of the money required to redeem the land in controversy on the third day of the next term, calculating interest 'to that date"; and to take and state an account of the rents and profits for each year, and of the necessary repairs and valuable improvements, with interest to the same day.

A report was made accordingly. But on July 18, 1877, Riley Long filed his original bill in the nature of a supplemental bill against Williams and J. F. Paul, setting up his purchase of the land from Williams on December 18, 1866, and seeking to perpetually enjoin J. F. Paul from relying as against him upon his purchase of the same land from Williams in January, 1876. Upon the final hearing the chancellor dismissed this bill, and sustained Paul's claim under the arrangement with Williams. Long alone appealed. The Referees have reported in favor of reversing the chancellor's decree, and, upon the ground that the decree of April 4, 1877, was a consent decree, they charged Long with the amount of money necessary to redeem the land as found by the master under that reference, and with the value of the improvements and repairs made upon the land as also found by the master, and credited him with the sum of the rents and profits reported. The result was that there was a balance of account against Long, for which a decree would be rendered against him.

The decree of the chancellor is erroneous. Long was the purchaser of Williams' interest in the land pending the original litigation. The assignee of an interest in the subject-matter of a pending litigation may either carry on the suit in the name of the assignor, or come in by an original bill in the nature of a supplemental bill and conduct the litigation in his own name: *Wills* v. *Whitmore*, 9 Baxt., 198; *Trabue* v. *Bankhead*, 2 Tenn. Ch., 412. For a *pendente lite* assignment carries with it an implied license by the assignor for the use of his name in the cause by the assignee to protect the rights assigned. And of this, the opposite party cannot complain, because the assignee is bound by all that is done whether a party or not: *Railroad Company, ex parte*, 95 U. S., 221. A supplemental bill by the purchaser to assert his rights in proper person is merely a continuation of the original suit, and the evidence taken therein may be used in both suits: *Sedgwick* v. *Cleveland*, 7 Paige, 290; *Northman* v. *Insurance Company*, 1 Tenn., Ch., 312. The decree of this court settled the right of Williams to redeem the land from the purchaser Paul, and the mode in which the redemption should be effected. Long purchased Williams' interest in the land when Paul was in possession as Williams' tenant, and before the master's sale at which Paul bought. There was consequently no champerty. After the confirmation of that sale, his, Paul's, possession was for himself, but the statute of limitations would not affect Williams' right to redeem, under his suit commenced only a few days after the confirmation of the sale. Paul might,

of course, have compromised the litigation with Williams by purchasing his interest in the land at any time before he had notice of the sale to Long: *Trabue v. Bankhead,* 2 Tenn. Ch., 412. But it seems probable from the record that Paul had notice of Long's purchase shortly after it was made, and he expressly affirms his knowledge of that purchase in his bill of December 3, 1875. After such knowledge, he could not, even by the prior registration of his conveyance, acquire a superior equity in the land to that of the earlier purchaser: Code, sec. 2074. And the legal right of Long was in fact perfected by the registration of his deed before the deed of Paul was validly registered. Long was entitled, under his bill, to perpetually enjoin Paul from using his after-acquired deed to his prejudice in the dismissal of Williams' redemption suit, and to have the benefit of that suit by intervening on his own behalf. The bill was, as we have seen, only a continuation of the original suit, and the statutes of limitations has no application. Long's right to redeem upon the terms and in the mode prescribed by the decree of this court is clear.

J. F. Paul, by his cross-bill, raised the question whether he was not entitled as against Long, to compensation for his permanent improvements. The Referees have reported in favor of his claim upon the ground that Long had agreed to give him this relief by the decree of April 4, 1877. But the consent of the parties to that decree was merely to a reference to ascertain and report by a given time certain facts with a view to a final decree. This is evidenced by

the fact that the reference is to ascertain the value of the improvements and of repairs with interest, and also "the present value of the improvements, that is," says the decree, "the value such improvements add at present to the land." The intention was to have every aspect of the case before the court for final disposition at the succeeding term of the court. And to make the intention clear, the decree adds: "All questions are reserved for further action of the court," a clause which seems to have escaped the notice of the Referees.

Paul was, however, entitled under his bill to the permanent enhancement in value of the land by reason of his improvement at the time fixed by the decree, not to the value of the improvements and repairs with interest. Long virtually admits in his answer to Paul's bills that he directed Paul to continue the construction of the mill he was building on the land, the mill constituting the principal part of the improvement. Other witnesses testify not only to Long's knowledge of the erection of the improvements, but to the fact that he agreed that Paul should have the benefit of them. Long should be charged with the amount necessary to redeem the land as reported by the clerk, $658.63, and the "present value" of the improvements, $1,400, and credited with the rents and profits, $1,780.57. Long should be required to pay the difference, $278.06, with interest from August 1, 1877. If the case stood alone upon the redemption suit, the money ought to be paid forthwith into court. But the character of the litigation has been changed by the bills filed by Paul, who has thereby been enabled to continue in possession

of the land, and, as the record shows, is still in pos-
session under bonds given from time to time to account
for rents. Long is entitled to the rents which have
accrued since the master's report. The collection of
the debt will be suspended until the taking of the ac-
count of these rents, when the one debt will be set
off against the other, and a decree rendered for the
balance according as it may be found. The land will
be subject to a lien for any balance found in favor
of Paul against Long. The right of Long to the land
subject to this lien will be declared, and a writ of
possession awarded to put him at once in possession.
Paul will pay the costs of this court, and one-half of
the costs of the chancery court, and Long the other
half of the costs of the latter court.