### WILLIAM DOWNING, *et al.*, v. W. E. HAXTON.

SALES AND REDEMPTIONS, *to be Recorded; Evidence; Error.* The statute requires a county treasurer to keep a record of tax sales and redemptions. A certified copy of such record is competent evidence, but it is error to permit the county treasurer, without producing his books in court, to testify that he finds from an examination of his books that a certain tax certificate has been redeemed. A record speaks for itself; and an officer in charge of a record, may not, in the absence of the record, testify as to what the record contains and shows.

### *Error from Davis District Court.*

ACTION, brought by *Haxton* to recover of *J. R. Horner*, treasurer of Morris county, and *William Downing*, and thirty-one other sureties on the said *Horner's* official bond, moneys alleged to have been by him received in redemption of certain tax-sale certificates belonging to *Haxton*. The action was originally brought in the district court of Morris county, and the venue was afterward changed to Davis county. Trial at May Term, 1877, of the district court, and verdict and judgment for *Haxton*. New trial denied, and defendants bring the case here on error. Other facts appear in the opinion, *infra*.

*Bradley & Nicholson*, for plaintiffs in error.

*McClure & Humphrey*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action by the defendant in error to recover of J. R. Horner, treasurer of Morris county, and the sureties on his official bond, moneys alleged to have been received by him in redemption of certain tax-sale certificates belonging to Haxton. We shall consider but a single question, as upon that, we think, a reversal must be ordered; and that arises upon the admission of the deposition of A. B. Spencer. Mr. Spencer, after stating that he was deputy treasurer of Morris county, and as such had access to the books, etc., of the office, stated:

"I find by reference to the books (of the treasurer), that tax certificate numbered 599, on the southeast quarter of southwest quarter of section 10, township 15, range 8, was redeemed on the 29th day of April, 1874, by L. C. Campbell, the owner thereof, paying into the county treasury the sum of $92.17."

This portion of the testimony was duly objected to, but the objection was overruled, and the testimony admitted.

The statute requires the county treasurer to keep a record of tax sales and redemptions, (Gen. Stat., p. 1049, § 94,) and a certified copy of that record would be evidence of the facts therein stated. (Gen. Stat., p. 700, § 372.) But mere oral testimony that certain facts are shown by such record, whether given by the officer in charge of the records or any other party, is not the best evidence of which the case is in its nature susceptible, and therefore not competent. (1 Greenl. Ev., § 82; *Bemis v. Becker*, 1 Kas. 226; *Cooper v. Armstrong*, 4 Kas. 30; *City of Leavenworth v. Laing*, 6 Kas. 274; *Manley v. City of Atchison*, 9 Kas. 358.)

Counsel for defendant in error, not insisting that this was competent testimony, say that if this testimony had been excluded the verdict must have been the same, and therefore the error was immaterial. If the record fully sustained counsel in their statement, the conclusion would be correct; but we are constrained to differ with them in their view of the other testimony. There are three items of testimony which are referred to as showing a redemption during the term of the treasurer whose official bond is sued on.

*First*—The plaintiff, Mr. Haxton, testified:

"I have never received the money, or any part of it, paid into the county treasury on redemption of lands described in the certificates in suit in this case. The certificates to which I refer are of the tax sales of 1871, and are respectively numbered 599, 623 and 692."

This was objected to as incompetent evidence of the fact of redemption, and its admission is here assigned for error; in reference to which counsel for defendant in error well say: "As to the second objection, in saying, 'I have never received the

money or any part of it,' paid into the county treasury on redemption of land described in the certificates in suit in this case, the witness would not be understood as intending to affirm that the land described in the certificates had been redeemed, and money paid into the county treasury, but only that he had not received the money—*i. e.*, the redemption money on the certificates. But if it is construed to be an affirmation of the fact that the land had been redeemed, and the redemption money paid into the treasury, it was a fact that Mr. Haxton had a right to state, if he knew it. The manner in which he derived his knowledge of the fact does not transpire, and presumptively he possessed a competent knowledge." We cannot say that the jury did not understand this testimony in the manner first above indicated by counsel; and even if they viewed it as affirming the fact of redemption, it does not show when the redemption took place—whether during the term of the treasurer sued, or that of his successor.

*Second*—The demand upon the county treasurer, and refusal to pay. The demand was upon Horner's successor, and this is the testimony concerning the same: "I got these certificates from L. P. Rude, on the order of W. E. Haxton. J. R. Horner ceased to be county treasurer in August, 1874. At the time I got these three tax certificates from L. P. Rude, county treasurer, I demanded of him, for W. E. Haxton, the redemption money due on them, which he refused to pay, for the reason that the redemptions were made while J. R. Horner was in office, and the money was never paid over to him." Does this show that redemptions were made during Horner's term? Clearly not. The reason stated is the reason given by Rude for not paying the money, but Horner is not bound by any such statement. It is no evidence against him or his sureties of the fact that he received the money. His own admission or statement binds him, but not the statement or excuse of some subsequent officer.

*Third*—The sale certificates themselves. On each appears an indorsement, "Redeemed," followed by a date and an amount. This was shown to be in the handwriting of the

deputy of Rude, the treasurer who succeeded Horner. Now, if the statute provided for any such indorsement, it might be *prima facie* evidence of the fact stated. Where there is a partial redemption, the law authorizes an indorsement of that fact. (Gen. Stat., p. 1052, sec. 103.) But that is the only provision that we are aware of in the matter; so that the indorsement is no more than the private and voluntary statement of the deputy of Horner's successor in office. It is not official, and does not bind Horner or his sureties. It would not seem to have been made until after Horner had ceased to be treasurer, for upon two of the sale certificates appear indorsements of receipt of taxes by Mr. Rude, made long after the date of the alleged redemption. We think, therefore, that it cannot be said that the verdict must have been the same if this incompetent testimony had been rejected; and so the error cannot be said to have been immaterial.

The judgment will be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.