### RICHARD SYKES *v.* W. H. BECK.

Opinion filed July 3, 1903.

**On Transfer of Interest in Subject of an Action, the Case May Proceed in Name of Original or Substituted Party.**

1. The equity rule which prohibits a purchaser of the subject-matter of an action *pendente lite* from further prosecuting the action in the name of the original party has been abolished in this state by section 5234, Rev. Codes 1899, which provides that "no action shall abate * * * by the transfer of any interest therein. * * * and that in case of such transfer, *   *   * the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action * * *"

**Purchaser Has Sole Right to Ask for Substitution—Allowance of It Discretionary.**

2. The sole right to ask for a substitution, under the section referred to, rests with the purchaser. He may prosecute the action in the name of the original party, or ask to be substituted, at his option. The allowance of a substitution by the court when requested is discretionary. In case there is no substitution, the statute requires that "the action shall be continued in the name of the original party."

**A Purchaser After Judgment and Before Appeal, Is a Purchaser Pendente Lite.**

3. A purchaser of the subject matter of an action after judgment, and before appeal, is a purchaser *pendente lite.* Section 5739, Rev. Codes 1899, provides that "An action is deemed to be pending * * * until its final determination upon appeal, or, until the time for appeal has passed. * * *"

**Dismissal for Such Transfer Will Be Denied.**

4. A motion to dismiss an appeal which is based upon the ground that the appellant assigned the subject-matter of the action after judgment, and before the appeal was taken, will be denied, where it appears that the appeal was in fact taken and is being prosecuted in this court by the assignee.

**Appeal Will Not Be Dismissed When Statement of the Case Does Not Embody All the Evidence—Power to Review Evidence Only, Affected.**

5. The fact that a statement of case, settled for the purpose of a review of the entire case in this court in an action tried under section 5630, Rev. Codes 1899, does not contain all of the evidence offered, will not sustain a motion to dismiss an appeal, which has been regularly perfected. The sufficiency or insufficiency of the statement merely affects the power of this court to review the evidence.

**Extension of Time to Settle Statement of Case, Discretionary—Modified Only for Abuse.**

6. It is *held,* on a motion to strike out the statement of case on the ground that good cause was not shown as a basis for the order of extension of time for settlement, that, upon the showing made, the court did not abuse its discretion in granting the extension.

**The Requirement, That Real Estate Be Assessed in Owner's Name, Is Directory—Disregard Not Fatal to Assessment.**

7. The provisions of chapter 126, p. 256, of the Laws of 1897, so far as they require an assessment of real estate to be made in the name of the owner, are directory, and a failure to assess in the name of the owner does not invalidate the assessment. Following *Hertzler* v. *Cass County* (decided at the present term) 96 N. W. 294.

**Section 5630, Rev. Codes 1899, Does Not Abolish Rules of Evidence.**

8. While section 5630, Rev. Codes 1899, which governs trials to the court without a jury, requires that all evidence offered shall be received into the record, it does not abolish the rules of evidence, or relieve trial courts from resting their findings upon legal evidence. Under said section this court, upon a review, is required "to disregard all incompetent and irrelevant evidence properly objected to."

**Evidence.**

9. Oral evidence that certain facts are shown by a written record, the original of which is available, is not the best evidence, and is incompetent.

**Levy of a Percentage on a Fixed Basis Is Levy of a Specific Sum.**

10. Under the maxim that that is certain which can be made certain, it is *held* that the 1897 and 1898 state tax levies, which were made by fixing a percentage upon the aggregate value of the property in the state, as equalized, were, in legal effect, levies of a specific sum. Following *Fisher* v. *Betts* (decided at the present term) 96 N. W. 132.

**Certified Copies of Official Records as Evidence.**

11. Certified copies of official records are essentially secondary in character, and the right to introduce such written copies as primary evidence exists only by virtue of statute, and, to authorize their admission, they must be certified in the manner required by the statute.

**Custodian of Record Can Certify to Copy Only, Not Facts.**

12. Section 5700, Rev. Codes 1899, provides that "the certificate must state in substance that the copy is a correct copy of the original or a specified part thereof, as the case may be. * * *" Under this section the authority of the certifying officer is limited to certifying that the copy is a correct copy of an original record, or a specified part of it; and the section does not authorize him to certify that any fact does or does not appear of record, or give him authority to substitute his judgment for that of the court, and certify what the record pertains to.

**Same.**

13. The plaintiff introduced in evidence a paper for the purpose of establishing the invalidity of a county tax levy. There was attached to it the county auditor's certificate "that the above is a true copy of all that pertains to the county tax levy for 1897 as the same appears on record of the county commissioners in my office." It is *held* that an objection that the exhibit was "not the best evidence and not properly certified," should have been sustained by the trial court, and will be sustained by this court, and the evidence disregarded.

**Evidence of the Existence or Non-existence of Record Entries.**

14. The best evidence of the existence or non-existence of entries in public records is the records themselves. When, because of the voluminous character of the records to be examined, or for other sufficient reasons, oral evidence is admissible to show the absence of a record or an entry, it should ordinarily be given by the legal custodian, and then only after showing a diligent search. As a rule, the oral evidence of another than the custodian is not the best evidence or competent when the testimony of the legal keeper can be had.

**Tax Proceedings Presumed Regular—Burden of Overthrowing Is Upon the Assailant.**

15. In this state the settled rule is that the person attacking the validity of taxes and tax sales has the burden of sustaining his attack. The presumption is that a tax is valid, and that presumption continues until overthrown by the party assailing it.

**On Failure of Such Assailant, Action Dismissed.**

16. In this case plaintiff attacks the validity of taxes upon his lands for the years 1897, 1898, 1899, and 1900, and asks that they be cancelled and declared void, alleging as grounds for such relief that the assessments and levies were void. It is *held,* on a trial *de novo* of the entire case, that plaintiff has failed to sustain the burden of his attack, and the action should be dismissed.

Appeal from District Court, Stutsman county; *S. L. Glaspell,* J.

Action by Richard Sykes against W. H. Beck. Judgment for plaintiff, and defendant appeals.

Reversed.

*Marion Conklin* and *Ball, Watson & Maclay,* for appellant.

Omission of lands from assessment roll, not fraudulently omitted, will not vitiate the taxes assessed upon other lands in the same taxing jurisdiction. *Shattuck et al.* v. *Smith et al.,* 6 N. D. 56, 69 N. W. Rep. 5.

Conceding that there was competent evidence that a compromise was made, the board of county commissioners had authority to make it under section 1242, Comp. Laws.

The assessment of the lands in name of Francis Logie Pirie et al, and so entering them on the tax list did not vitiate the taxes. In *Sweigle* v. *Gates, et al,* 9 N. D. 538, 84 N. W. Rep. 481, the assessment was for the year 1887, and is controlled by section 1547 and 1548, Comp. Laws; while the assessment in the case at bar was under chapter 126 of the Laws of 1897. Under section 1208 the county auditor makes out a real estate property assessment book, showing all lands and lots for assessment, name of the owner, if known, and if unknown, so stating it. Under a similar statute in Minnesota the Supreme Court of that state held, that the proceedings in taxation thereunder were entirely *in rem,* and the requirement as to making assessment in the name of the owner was directory and not mandatory. *McQuade* v. *Jaffray,* 50 N. W. Rep. 233. Under the revenue law of 1887, in actions brought to set aside taxes, courts were required to render personal judgment against the plaintiff for the amount which the court determined ought to be paid, even though the taxes themselves were set aside. This in effect made the tax a personal one, not a charge on the land alone. Section 1643, Comp. Laws 1887; *Roberts* v. *First National Bank of Fargo,* 8 N. D. 474, 504, 79 N. W. Rep. 993, 1049, was rendered under such statute, which remained in force until repealed by revenue law of 1897, which substituted recovery from county and made real property taxes purely a proceeding *in rem.* The reasoning in these cases does not control the decision of this appeal. In any event the land herein was assessed in the name of one of the owners, and the tax should not be set aside because not made in the name of all. Black on Tax Titles, 131, 132.

Exhibits "S" and "T" (certified copies of certain resolutions of the state board of equalization) were not sufficient to prove that the state taxes of 1897 and 1898 were levied in mills and not in specific amounts; but if the former method were proved, the taxes were not thereby invalidated. The tax certificates introduced by defendant were *prima facie* evidence of all the requirements of law. The exhibits (S and T) are not sufficient to overcome such proof. Exhibit "S" simply shows compliance with subdivision 4 of section 1225, Rev. Codes, and does not establish the fact that levies were not made in a specific amount. The position of the state board's pro-

ceedings as per exhibit "S" may apply to the action taken upon the completion of the equalization and as the board's decision upon the rate of the state tax. The proof does not show that at some other time in the proceedings the state board did set forth the specific amount of money to be raised by taxation in each of the years in question. The burden of proof being upon the plaintiff, no presumption will be indulged in his favor that these were the only proceedings upon the subject of state levies.

Conceding that the proof was sufficient to establish the making of levies in mills instead of specific amounts, such action does not invalidate the taxes. *Fisher* v. *Betts et al,* 12 N. D. 197, 96 N. W. Rep. 132.

The levy of such taxes was legalized by the legislature. Chapter 159, Laws of 1901; *Shattuck et al.* v. *Smith et al,* 6 N. D. 56, 69 N. W. Rep. 5; *Wells County* v. *McHenry et al,* 7 N. D. 246, 74 N. W. Rep. 241.

The county levies were made for the years in question and based upon itemized statements of the county expenses for the ensuing year.

The court below found that for the years 1897 to 1900 the county taxes levied upon the lands in question were based on no itemized statement of the county expenses for the ensuing year, also that the board fixed the expenditures for such years as a basis for the tax levy, but passed no resolution levying a tax; as a conclusion of law that there was no valid levy of the state or county taxes for either year.

The tax certificates were 'prima facie evidence of the regularity of the proceedings. Oral testimony was offered to show that a statement of the county expenses was before the board in the form of a warrant book and a statement of previous year from which an estimate was made, and the levy based upon it. The deputy auditor testified that he was unable to find the statement mentioned. The warrant book was in evidence and showed a condensed statement for the previous year. It was a proper basis for the expenses for the ensuing year. A summary of the statement was carried into the proceedings of the board. But section 1228 does not require that the itemized statement shall appear in the board's proceedings; but in the published proceedings, and it does not appear that such statement did not appear in the published proceedings of the board. The board having taken the legal steps, the proceeding is not void

because a proper record is not kept, or not preserved by the legal custodian. It is here simply a question of a lost record. Contents of a lost record of tax proceedings are subject to parol proof as in other proceedings. *Hilton* v. *Bender,* 69 N. Y. 75.

It is claimed that there was no levy. The language of the record is: "The board fixed expenditures for the year 1898 as a basis for the tax levy of 1898 as follows:" For 1899 it is: "The board unanimously fixed expenditures for 1899 as the basis for tax levy for 1899 as follows:" The court found that the board fixed expenditures, but no resolution was passed to levy a tax, basing this finding on the above language. We think the language sufficient. It would be extremely technical to hold these levies void for lack of formal and exact language. They brought into the record the expenditures proposed for the ensuing year and declared them the basis of the levy for that year. This is sufficient. *West et al* v. *Whitaker et al,* 37 Ia. 598; *Snell* v. *City,* 45 Ia. 564; *Levade* v. *Dean,* 47 Tex. 90.

*J. E. Robinson* and *S. E. Ellsworth,* for respondent, Richard Sykes.

In the years 1895-6-7-8, 320 sections of land were assessed by taxation and taxes charged against them. On July 3, 1899, the county commissioners accepted a commutation of all said taxes, 73 per cent of the original tax, without interest or penalty. The court found that the rate of taxation against the N. P. R. R. lands was reduced 50 per cent. Sixty-one (61) of these sections were in the township adjoining plaintiff's lands. If this was competent, the board might have received 25 per cent or 5 per cent or no per cent. This cannot be done, unless the commissioners can tax the even numbered sections and exempt the odd. Such arbitrary exemption is essentially fraudulent. An accidental omission does not invalidate a tax, but when the omission is so great as to materially affect the uniformity of taxation it avoids the assessment and tax. *Auditor General* v. *Prescott,* 94 Mich. 190, 53 N. W. Rep. 1058; *Smith* v. *Smith,* 19 Wis. 615; *Kneeland* v. *City of Milwaukee,* 15 Wis. 457 and 691; *Hersey* v. *Supervisors,* 37 Wis. 75; *Marsh* v. *Supervisors,* 42 Wis. 502, 511; *Plummer* v. *Supervisors,* 46 Wis. 163, 174, 175; *Johnson* v. *Oshkosh City,* 65 Wis. 473, 477, 27 N. W. Rep. 320; *State* v. *Brand,* 23 N. J. Law, 509.

There was no assessment of the lands in the name of the owner, as provided by law. If known, assessment must be in owner's

name, or if unknown, so stated. The tax list and assessment book must correspond as to ownership, and description of property, so that notice of redemption can be given to the person *in whose name the land is assessed.* Laws of 1897, chapter 126, sections 31, 52 and 106. The assessment of real estate for taxation in the name of another than the owner, is invalid.

Cooley on Taxation (2d Ed.) 396; Blackwell on Tax Titles, section 257; Black on Tax Titles, section 105; *Sweigle* v. *Gates,* 9 N. D. 539, 84 N. W. Rep. 481; *Whitney* v. *Thomas,* 23 N. Y. 281; *Kelsey* v. *Abbott,* 13 Cal. 609; *Himmelman* v. *Steiner,* 38 Cal. 175; *Stockton* v. *Dunhan,* 59 Cal. 608; *People* v. *Castro,* 39 Cal. 65; *People* v. *Whipple,* 47 Cal. 591; *Brady* v. *Dowden,* 59 Cal. 51; *Hearst* v. *Eggleston,* 55 Cal. 365; *Crawford* v. *Smith,* 47 Cal. 617; *Klumpke* v. *Baker* (Cal.) 10 Pac. 197; *Pierson* v. *Creed,* 78 Cal. 144, 20 Pac. 302; *Hamilton* v. *City of Fon du Lac,* 25 Wis. 496; *Milwaukee Iron Co. et al.* v. *Hubbard,* 29 Wis. 51, 56; *Seymour* v. *Peters,* (Mich.) 35 N. W. Rep. 63; *Pieoter* v. *Whaley* (Mich.) 45 N. W. Rep. 81; *Mansfield* v. *Martin,* 3 Mass. 419; *Desmond* v. *Babbit,* 117 Mass. 233.

The claim sought to be supported by *McQuade* v. *Jaffray,* 50 N. W. Rep. 233, where assessment was not made to owner or unknown owners, will not stand. The holding is only, that a citation and notice to obtain a tax judgment against land need not contain owner's name. *Himmelman* v. *Steiner,* 38 Cal. 175, does not sustain appellant's position. The holding therein is the reverse.

For the years 1897-98, the state taxes are void, because not levied in specific amounts. Laws of 1891, section 6; Laws of 1897, chapter 126, section 50. See *Wells County* v. *McHenry,* 7 N. D. 246, 261, 74 N. W. Rep. 241; *Dever* v. *Cornwell,* 10 N. D. 123, 84 N. W. Rep. 227.

In the years 1897 to 1900 inclusive, the county taxes were not levied according to law, in that it does not appear that they were based upon an itemized statement of the county expenses for the ensuing year, and a general statement of the outstanding indebtedness of the county. *Shattuck* v. *Smith,* 6 N. D. 56, 69 N. W. Rep. 5.

The tax levies were not legalized by chapter 159, Laws of 1901. *Shattuck* v. *Smith, supra,* held that the legislature of 1891 had power to validate an attempted levy of state tax of 1890, when the state had the power to make the state levy. But after interest and penalties

have accrued it is too late to validate even state levies. *Dever* v. *Cornwell, supra.*

Brief on motion for dismissal:—

The appeal should be dismissed and judgment below affirmed, because the record shows affirmatively that it does not contains all the evidence offered on the trial.

*Kipp* v. *Angell,* 10 N. D. 199, 86 N. W. Rep. 706 ; *Little* v. *Phinny,* 10 N. D. 351, 87 N. W. Rep. 593 ; *Eakin* v. *Campbell,* 10 N. D. 416, 87 N. W. Rep. 991 ; *Teinen* v. *Lally,* 10 N. D. 153, 86 N. W. Rep. 356 ; *U. S. Savings & Loan Co.* v. *McLeod,* 11 N. D. 111, 86 N. W. Rep. 110.

YOUNG, C. J. The plaintiff instituted this action in the district court of Stutsman county to determine adverse claims to certain real estate owned by him and situate in that county. The defendant, Beck, purchased all of said lands at the 1898 tax sale for the taxes of 1897, and again at the 1899 sale for the taxes of 1898, and also paid the subsequent taxes thereon for the years 1899 and 1900. The plaintiff alleges "that in said years the said lands were not legally assessed for taxation, and no taxes were legally levied or charged against the same. * * * and that by reason thereof all of said taxes and tax sales are wholly void," and prays "that all of said taxes and tax sales be adjudged void and cancelled." The trial court held that there was no valid assessment of any of said lands for taxes for any of the years in question, and further held that the state and county taxes levied for each of said years were invalid, and entered judgment declaring all of said taxes and tax certificates void. Defendant has appealed from the judgment, and demands a review of the entire case in this court, under section 5630, Rev. Codes 1899.

Prior to the argument on the merits, counsel for respondent made two preliminary motions. Both must be denied. The first motion is to dismiss the appeal. The grounds of this motion are (1) that the appellant, Beck, sold and assigned the tax certificates since the entry of judgment in district court, and prior to taking the appeal; and (2) that the statement of case shows affirmatively that it does not contain all the evidence offered at the trial.

The affidavits submitted upon the first ground of the motion to dismiss the appeal show that subsequent to the entry of judgment, and before the appeal was taken, the defendant sold all of said certificates to Daniel M. Robbins, and that the latter had the

same assigned to one John Wyman; further, that the written assignment, in terms, authorizes the assignee to prosecute this suit and defend his rights under such certificates, by appeal or otherwise, in the plaintiff's name, or in his own name, at his election, but at his own expense. This appeal was taken in the defendant's name, pursuant to such authority, and is prosecuted by the purchaser of the tax certificates in the name of his assignor, with his consent. The notice of appeal was signed by the attorneys for the assignor, also by the attorneys of the assignee, and both of the attorneys for the assignor and the assignee appear in this court. Counsel for respondent contends that as the appeal was taken in the name of the defendant after he had parted with his interest in the tax certificates, which are the subject matter of the action, it was unauthorized and confers no jurisdiction. Counsel relies upon the equity rule which is to the effect that "where a complainant sells his whole right in the suit, or it becomes vested in another by operation of law, whether before or after a decree, if there is to be any further litigation in the case it cannot be carried on in the name of the original complainant by the person who has acquired the right." *Mills* v. *Hoag,* 7 Paige 18, 31 Am. Dec. 271. This rule has been abolished by statute in this state. Section 5234, Rev. Codes 1899, provides that "no action shall abate by the death, marriage or other disability of a party, or by the transfer of any interest therein, if the cause of action survives or continues. In case of death or other disability of a party, the court on motion at any time within one year thereafter, or afterwards on a supplemental complaint, may allow the action to be continued by or against his representatives or successor in interest. In case of any other transfer of interest the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action. * * '*" In this state a transfer after judgment, but before the right of appeal has expired, is a transfer *pendente lite,* the appeal being regarded as a continuation of the original action. See 2 Enc. Pl. & Pr. 35, and cases cited. Section 5739, Rev. Codes 1899, provides that "an action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." The right to take and prosecute this appeal in the name of the original defendant is given by that part of section 5234, Id., above

quoted, which provides that "in case of any other transfer of interest the action shall be continued in the name of the original party or the court may allow the person to whom the transfer is made to be substituted in the action." This identical provision was a part of section 121 of the Code of 1862 of New York. In *Packard* v. *Wood,* 17 Abb. Prac. 318, the court, in construing it, said: "Section 121 has superseded the practice of the late court of chancery in respect to the manner of conducting an action where a change or transfer of interest has occurred since the commencement of the action. As to the former practice, see *Sedgwick* v. *Cleveland,* 7 Paige 287." In *Emmet* v. *Bowers,* 23 How. Prac. 300, the court said: "The nominal plaintiff being alive and not subject to any disability, the suit can proceed in his name. Code, section 121. If the transferee does not apply to be substituted as plaintiff, the language of the Code is that 'the action shall continue in the name of the original party.'" Again, referring to this section, in *Harris* v. *Bennett,* 6 How. Prac. 220, the court said: "The Code, section 121, directs that in case of a transfer of interest, otherwise than by marriage, death or disability of the party, the action shall be continued in the name of the original party. This is imperative and allows no change, but it adds: 'The court may allow the person to whom the transfer is made to be substituted.' This last is permissive only, and gives a discretion to the court which is intended to be exercised only as the ends of justice may require." It is also well settled that the purchaser *pendente lite* is the person to move for the substitution, and that the order is not to be made as matter of course without imposing conditions. *Howard* v. *Taylor,* 11 How. Prac. 380. "It is not obligatory upon the transferee of an interest to make application for his substitution as a party to the action. If he does not it is continued in the name of the original party." *Platt* v. *McMurray,* 63 How. Prac. 149; *Hirshfeld* v. *Bopp,* 27 App. Div. 180, 50 N. Y. Supp. 676. In *Lawson* v. *Town of Woodstock,* 37 Hun. 352, the court said: "The action may proceed in the name of the original party. That, then, is his privilege, in spite of the transfer. If the assignee desires to come in, he may be substituted; but, if he does not, we think it is not in accord with that section to prevent the original party from proceeding in his own name. The provision that an action must be prosecuted in the name of the party in interest is evidenly modified by the section last cited." See also, *McGean* v. *M. E. R. Co.,* 133 N. Y. 9,

30 N. E. 647; *St. John et al.* v. *Croel,* 10 How. Prac. 253; *Boston, W. H. & R. Co.* v. *Jackson* (Sup.) 55 N. Y. Supp. 573. See, also, Barbour on Parties to Actions, 431, 434.

The statute of California is substantially like our own. It has been uniformly held in that state that, when the subject matter of a pending action is transferred, it is the right of the transferee to prosecute or defend the action either in the name of the original party, or to request a substitution, and further, that the assignor *pendente lite* is, after the assignment, divested of further authority to control the action. *Walker* v. *Felt,* 54 Cal. 386; *Plummer* v. *Brown,* 64 Cal. 429; *Stewart* v. *Spalding,* 72 Cal. 264, 13 Pac. 661; *California Cent. Ry. Co.* v. *Hooper,* 76 Cal. 404, 18 Pac. 599; *Malone* v. *Big Flat Gravel M. Co.,* 93 Cal. 384, 28 Pac. 1063; *Emerson* v. *Mc-Whirter,* 128 Cal. 268, 60 Pac. 774; *O'Neil* v. *Dougherty,* 46 Cal. 576. The assignee has authority to control the action after as well as before judgment, including the right to prosecute an appeal. In *O'Neil* v. *Dougherty, supra,* the appellant had been adjudged a bankrupt before his appeal was taken. The Supreme Court overruled a motion to dismiss the appeal, based upon the ground that he was not the real party in interest, and held that under the statute the appeal might be prosecuted in the name of the bankrupt, or in the name of his assignee. Such, in effect, also, was the holding of this court in *Anheier* v. *Signor,* 8 N. D. 499, 79 N. W. 983, in which we held that "a party who purchases property from a defendant *pendente lite* may, with the permission of a court of equity, and under section 5234, Rev. Codes 1899, appear in the case at any stage of the proceedings to defend his interest." In the case just referred to, counsel for respondent moved to dismiss the appeal basing his motion upon a stipulation of the appellant that it might be dismissed. The motion was resisted by a purchaser from the appellant *pendente lite.* The motion was denied, and the purchaser was permitted to prosecute the appeal in this court in the name of the assignor. As sustaining the right of purchasers after judgment to take and prosecute an appeal, see also, *Ex parte South & North Alabama Railway,* 95 U. S. 221, 24 L. Ed. 355; *Roszell* v. *Roszell* (Ind.) 4 N. E. 423; *Vail* v. *Lindsay,* 67 Ind. 528; *Bowden* v. *Johnson,* 107 U. S. 251, 264, 2 Sup. Ct. 246, 27 L. Ed. 386; *Parker* v. *Taylor* (Neb.) 91 N. W. 537; *Keough* v. *McNitt,* 7 Minn. 29 (Gil. 15). We are of opinion that the appeal in this case was properly taken and is properly prosecuted in the name of    the

original defendant. There has been no application for substitution by the purchaser of the certificates. The case at bar is to be distinguished from cases of disability arising from death or similar causes, as well as from cases in which the original party appeared only in a representative capacity, such as administrator, executor, or guardian, and the representative character has terminated. *McCormick Harvesting Machine Co.* v. *Snedigar,* 3 S. D. 625, 54 N. W. 814, cited in support of the motion, belongs to the latter class.

The second ground of the motion to dismiss the appeal, to wit, that the statement of case does not contain all the evidence offered, if true, in point of fact, furnishes no ground for dismissing the appeal. It is conceded that the appeal was regularly taken. The objection, if well founded, would only affect the appellant's right to secure a review of the evidence in this court under section 5630, Rev. Codes 1899. Errors assigned upon the judgment roll proper would still be reviewable. The statement is not, however, open to the objection urged against it. Counsel's claim is that he offered in evidence a certified copy of the county tax levy for the year 1900. The record conclusively negatives this contention. The record of his offer is as follows: "The plaintiff now offers in evidence certified copies of the county tax levies for the years 1897, 1898, 1899, and 1900, so far as the same pertain to the land in question, and certified copies of the state tax levy for the years 1897 and 1898, and a certified copy of the resolution pertaining to the publication of the delinquent tax list in 1898, marked Exhibits M to U, inclusive." Each one of the several exhibits referred to as having been identified and offered are contained in the statement. A certified copy of the tax levy for 1900 is not one of them. Counsel doubtless intended to offer a certified copy of the tax list for 1900, but it is clear that he did not do so. Exhibits M to U were the only exhibits identified and included in his offer, and they are in the statement. Counsel also claims "that a certain book, called 'Register of Warrants Issued and Claims Filed,' was offered, and that the same has been omitted from the statement." No such book is contained in the statement. The abstract shows that the defendant's counsel attempted to introduce the book referred to, and that counsel for plaintiff repeatedly objected to its introduction, stating that it must either be read to the court, or a certified copy filed, insisting that "the law provides that certified copies of the book must be offered in evidence, unless it is filed with the clerk." The record

shows that counsel for defendant yielded to the objection, and asked leave to file certified copies of the portions of the book he desired to introduce, that leave was granted, and that the certified copies were thereafter filed. In short, the record shows a withdrawal of the offer, and a substitution of certified copies. The motion to dismiss the appeal will be denied.

The second motion is to strike out the statement of case upon the ground that when it was settled the time for settling it had expired, and good cause was not shown for extending the time. This motion must also be denied. Notice of entry of judgment was served on March 13, 1902. Within the thirty days allowed by law for settling the statement, and on April 10th, the defendant obtained an order extending the time for thirty days. On May 10th, thereafter, a second order was obtained, extending the time for fifteen days from May 10. The statement was settled within the last extension. Both orders extending time were made against plaintiff's objection. The orders were based upon the affidavits of Marion Conklin and Oscar J. Seiler, counsel for defendants. The affidavit of Oscar J. Seiler states, among other alleged grounds for the extension, the fact "that there are a large number of exhibits in the case to be copied, and that it requires a great amount of work to prepare such statement of the case. * * *" The affidavit of Marion Conklin is to the same effect. The trial judge had knowledge of the extent of the record, and the amount of labor required to prepare the statement. The record was voluminous, and required much difficult copying. This was known to the trial judge, and is apparent to us from the record filed in this court. The extension allowed, forty-five days, was not unreasonable, under the circumstances, and we do not think the trial court abused its discretion in granting the same upon the showing made. It is only in case of an abuse of discretion that such an order will be reversed.

We now turn to the merits. The fact that plaintiff is now the sole owner of the several tracts of land involved, as alleged by him, is not in dispute. Neither is there any controversy over the fact that defendant purchased said land at the tax sales, and paid taxes thereon, as hereinbefore stated. The controverted questions, both of law and fact, upon which the case must be determined in this court, are all embraced in the following findings and conclusions of the trial court:

"(1)   That in the years 1897, 1898, and 1899, and 1900, the said property was not assessed for taxation in the name of the owner, and it was not assessed to unknown owners.  It was assessed in the name of 'Francis Logie Pirie et al,' and the said Francis Logie Pirie never had more than an undivided one-third interest in the said lands, and in the said years the record shows that Richard Sykes had an undivided one-third interest in the said lands.

"(2)   That in July, 1899, there was in Stutsman county 320 sections or more of Northern Pacific railroad lands on which all taxes for the preceding five years remained delinquent;  and the said lands had been assessed for taxation in said years on the same basis of valuation as the other lands in Stutsman county;  and by resolution of the county commissioners passed in July, 1899, all taxes charged against said Northern Pacific railroad lands were canceled on the payment of 73 per cent of the original tax, without either penalty or interest, and in that manner the rate of taxation against the said Northern Pacific railroad lands was reduced to 50 per cent of the rate charged and levied against the other lands in Stutsman county.

"(3)   And the court finds that in the years 1897 and 1898 the state taxes which were levied and charged against the said lands of the plaintiff were levied in mills, and not in specific amounts, as required by section 50 of the revenue laws of 1897 (Sess. Laws, p. 275, c. 126).

"(4)   And the court finds that in the years 1897 to 1900, inclusive, the county taxes levied and charged against said lands were not based on an itemized statement of the county expenses for the ensuing year, or on a statement of the outstanding indebtedness of the county.  In 1897 the county tax levy was as follows:

"On motion the county auditor was instructed to make a levy for the year 1897 as follows:

| | |
|---|---|
| County fund ..... ............ ...... ...... | $20,000 |
| Sinking fund ............ ........ ....... | 5,000 |
| Road fund .......... ....... ............ | 8,000 |
| Bridge fund ....... ........ ..... ........ | 5,100 |

"In the year 1898 the county commissioners passed a resolution fixing the expenditures as a basis for the tax levy, but there was no resolution to levy a tax either in mills or a specific amount. In 1899 the board met, and by resolution fixed the expenditures for

that year as a basis for the tax levy, but the board passed no
resolution to levy a tax; and the same is true of the year 1900.

"As a conclusion of law, the court finds that in the years 1897
to 1900, inclusive, the said lands were not legally assessed for tax-
ation, and that there was no valid levy of the state and the county
taxes charged against said lands, and that all of said taxes, and
the sales based thereon, were illegal and void, for the reason that
the said lands were not assessed for taxation, and that said taxes
were not levied according to law; that the plaintiff is entitled to
judgment that all of said taxes and tax sales and tax certificates
be canceled, annulled, and adjudged void, and that he recover from
W. H. Beck the costs of this action.     *     *     *"

The appellant does not challenge the correctness of the first
finding of fact above quoted. His attack is upon the conclusion
of law based upon it. The evidence shows that, when the several
assessments  were  made, the lands in question were owned by
Francis Logie Pirie, Richard Sykes, and Finley Dunn, each having
an undivided one-third interest. The assessment in each year was
in the name of "Francis Logie Pirie et al." The appellant contends
that the falure to assess the lands in the names of the three own-
ers did not render the assessments void, and that the trial court
erred in so holding. We agree with this contention. The assess-
ments in question were laid under chapter 126, p. 256, Laws 1897.
The validity of an assessment of real estate in the name of one not
the owner thereof was involved in the case of *Hertzler* v. *Cass
County,* 96 N. W. 294, in which the opinion has just been handed
down. We held in that case that the provisions of the 1897 act,
so far as they require an assessment of real estate to be made in
the name of the owner, are for the guidance of the taxing officers,
for the purpose of securing system in the tax proceedings; that
they are not vital to a valid assessment, and are therefore directory.
*Sweigle* v. *Gates,* 9 N. D. 538, 84 N. W. 481, is cited by counsel
for plaintiff in support of his contention that the assessments are
void. The decision in that case turned upon the provisions of the
Compiled Laws. The later case of *Roberts* v. *Bank,* 8 N. D. 504,
79 N. W. 1049, is also relied upon. The Roberts case was based
upon chapter 132, p. 376, Laws 1890. The statutes upon which
both of these cases were based created a personal liability, and
authorized personal judgments for real estate taxes. See section
1643, Comp. Laws Dak. 1887, and section 1273, Rev. Codes 1895.

Tax proceedings under the 1897 act, under which the assessments here in question were made, are strictly against the land itself, and involve no personal liability. Further, section 81, p. 287, of this act provides that no "sale of real estate for taxes shall be considered invalid on account of the same having been charged in any other name than that of the rightful owner." Following the construction announced in the case of *Hertzler* v. *Cass County,* we must hold that the assessments were not invalid because not made in the names of the three owners.

Appellant contends that there is no competent evidence to sustain the second finding, to wit, that the county commissioners canceled five years' taxes on 320 sections or more of Northern Pacific railroad lands upon payment of 73 per cent of the original tax. We fully agree with this contention. The evidence shows that the receivers of the railroad company petitioned for a rebate of the taxes, and that the county commissioners passed a resolution authorizing the treasurer to accept payment of 73 per cent, and upon such payment to cancel said taxes. There is no competent evidence, however, that any payments were made or taxes canceled. The evidence offered for that purpose was clearly incompetent. It was furnished by plaintiff's counsel, who testified, over objection, as follows: "I am an attorney at law, and as such I am in the habit of examining records, titles to lands, and tax records, and in this case I have examined the records pertaining to this land, and the tax levies against it for the years in question, and the records pertaining to the cancellation of the taxes for 1895, 1896, 1897, and 1898 against the Northern Pacific railroad lands in this county, and, on such examination, I find, without exhausting and without going all over the books, I counted 320 sections of Northern Pacific railroad lands on which the taxes had been canceled, under this resolution of the county commissioners, on payment of 73 per cent of the original taxes. On the tax lists for those years there is a stamp opposite the description of each tract of land, the words: 'Canceled by resolution of board of county commissioners July 3rd, 1899, on payment of 73 per cent of the original taxes for the years 1895, 1896, 1897 and 1898.' * * *" A motion was made to strike out all of the foregoing testimony on the ground that it was incompetent, irrelevant, and immaterial. The objection was well taken. The testimony is clearly incompetent, and should have been disregarded by the trial court,

and must be disregarded by this court. This case was tried under section 5630, Rev. Codes, 1899. That section requires that all evidence offered shall be received into the record. It does not abolish the rules of evidence, however, and it is just as essential as it ever was that findings of fact shall be based on legal evidence. Upon a review in this court of a case tried under said section, the requirement is that "all incompetent and irrelevant evidence properly objected to in the trial court shall be disregarded." This oral testimony relates to the contents of written records. It is not the best evidence, and is incompetent. Oral testimony that certain facts are shown by a record, whether given by the officer in charge of the records or any other party, is not the best evidence of which the case is in its nature susceptible, and therefore not competent. 1 Greenl. Ev. section 82; *Bemis* v. *Becker,* 1 Kan. 226; *Cooper* v. *Armstrong,* 4 Kan. 30; *City of Leavenworth* v. *Laing,* 6 Kan. 274; *Manley* v. *City of Atchison,* 9 Kan. 358; *Downing* v. *Haxton,* 21 Kan. 178. See 1 Jones on Evid., sections 197-199, and cases cited. This testimony must be rejected. There is therefore no legal evidence that any Northern Pacific taxes were paid under the resolution referred to. We do not wish to be understood as intimating that, if legal evidence of payment and cancellation had been offered, it would invalidate the plaintiff's taxes. See section 1242, Rev. Codes 1899.

There is no conflict in the evidence as to the state tax levies for 1897 and 1898 referred to in the third finding of fact. For the purpose of showing their invalidity, plaintiff introduced as an exhibit a certified copy of a portion of the proceedings of the state board of equalization which is as follows: "August 11th, 1897. Mr. Cowan moved that the state tax levy to defray the expenses of the state for the current year be fixed at three and eight-tenth mills on the dollar of the assessed valuation of all taxable property in the state, as equalized by the state board of equalization, and that the state levy to pay interest on the state debt for the current year be fixed at five-tenths of one mill on the dollar of the assessed valuation of all taxable property in the state as equalized by the state board of equalization. Which motion prevailed." A certified copy of the proceedings for the year 1898 was also introduced, corresponding in all respects to that for 1897, above set out. Counsel for plaintiff contends that the evidence furnished by these exhibits establishes the fact that the levies for

both years were not by specific amounts, and are therefore void. Appellant's counsel contend, on the other hand, that the certified copies do not go far enough to show that levies were not in fact made in specific amounts. Their contention is that the action of the board, as shown by the certified copies, was required by statute to be taken by it, and it should not be presumed that the resolution contained in the certified copies represents all the action taken by the board, and that they did not, in fact, make a levy in a specific amount in dollars and cents. It is urged that the resolution adopted was in strict conformity to the duty required of the board after completing the equalization by subdivision 4, section 1225, Id., which provides that, "upon the completion of such equalization and determination of the aggregate valuation of all the property of the state, the said board shall then decide upon the rate of the state tax to be levied for the current year, together with any other general or special state taxes required by law to be levied." And it is urged that it cannot be assumed that the board did not, in fact, literally comply with section 1228, Id., which section, after providing that state taxes shall be levied by the state board of equalization, provides that "such levy shall be made in a specific amount and the rate shall be determined by the state auditor." It will be noted that subdivision 4, section 1225, requires the board to fix the rate of the state taxes. This subdivision was added to the revenue laws by the adoption of chapter 126, page 256, Laws 1897. The pre-existing statute, requiring the levy to be made in a specific amount (section 1228, *supra*), was retained. It is not necessary to enter upon a construction of these apparently conflicting provisions, or to pass upon counsel's contention that there is no evidence that the board did not make a levy in a specific amount. We may assume that it did not, and that the only levy made was that set out in the resolution. The board did, however, what was its exact equivalent: It levied a fixed percentage upon a definite aggregate sum. Under the maxim that that is certain which can be made certain, such a levy is in legal effect a levy of a specific sum. We have just held, in the case of *Fisher* v. *Betts,* after argument upon rehearing, that the state tax levies for 1889 and 1891, which were made by percentages instead of specific amounts, were valid. The controlling distinction between state levies and county, township and school district levies is pointed out in that case.

The fourth finding of fact, which relates to the county levies for 1897, 1898, 1899, and 1900, is not supported by the evidence. No evidence whatever was introduced as to the county levy for the year 1900. Counsel for plaintiff attempted to prove that the county levies for the three remaining years, 1897, 1898, and 1899, were void, and for the purpose of establishing the acts of the board of county commissioners relative thereto, introduced in evidence three separate papers, known as Exhibits M, N, and Q, which exhibits, as appears by the auditor's certificate thereto attached, relate to the tax levies for those years. These exhibits were objected to by counsel for the appellant upon the ground that they were incompetent, irrelevant, and immaterial, not the best evidence, and not properly certified; that the certificates state conclusions instead of facts." Under the statute under which the case was tried, the exhibits were received into the record notwithstanding the objection, and although no ruling appears to have been made by the trial court, it is evident that they furnished the foundation upon which the findings as to the county levies are based. The certificates attached to the exhibits are the same in form. That for the year 1897 is as follows: "State of North Dakota, Stutsman county. I hereby certify that the above is a true copy of all that pertains to the county tax levy for 1897 as the same appears on record of the county commissioners in my office. Dated January 8, 1902. L. B. Niemeyer, county auditor, By G. A. Lieber, deputy." The objection of appellant's counsel should have been sustained by the trial court, and must be sustained by this court. The copies are not properly certified, and are therefore not admissible.

The right to make proof of official records and documents primarily by copy does not exist independent of statute. Such evidence is essentially secondary. The rule and the reasons upon which it is founded are well stated in 1 Wharton on the Law of Evidence, section 60, as follows: "Whenever an original document can be brought into court, secondary evidence of its contents is, as a rule, inadmissible. * * * The policy of the law, independent of other reasons, requires that its original, if practicable, should be produced. For (1) *lex scripta manet,* while memory as to words is treacherous; and even though not memory, but a written copy, be offered, such copy has between it and the original the possibility of mistake or of falsification. Then, (2) if a party be permitted to hold back the original, when he could produce it, and substitute

for it a secondary proof, a door would be opened to fraud. And (3) unless such a rule be inexorably applied, an end would be put to that accurate and thorough presentation of facts which is essential to the administration of justice. If no evidence is to be rejected because it is secondary, a single witness would be sufficient to swear, either primarily or secondarily, either by firsthand or second-hand impressions, to a whole case, documentary and oral. The testimony of a witness in such a case would be a mere conclusion of law, derived from his own notions of facts, with this peculiarity —that the law would be made by himself for the occasion, and the functions of both judge and jury would be dispensed with." The rule of evidence which prohibits the use of copies is superseded by statute in this state, to the extent that proof of certain official records or documents may be made by copies certified by the legal keeper. Subdivision 5, section 5699, Rev. Codes 1899, provides that proof may be made of "acts of a municipal corporation of this state, or of a board or department thereof, by a copy of the official record of such acts, certified by the legal keeper thereof, or by a printed book purporting to be published by the authority of such corporation and to contain a record of such acts." It is patent that, as copies of official records and documents are admissible as primary evidence only by virtue of the statute, they must be certified in the manner required by the statute. The manner of certification is governed by section 5700 Id., which reads as follows: "Whenever a copy of a writing is certified for the purpose of evidence, the certificate must state in substance that the copy is a correct copy of the original, or of a specified part thereof, as the case may be. * * *" Neither of the certificates attached to the papers by which the plaintiff attempts to prove the acts of the board of county commissioners relative to the county tax levies comply with the statute. The certificates do not state, in substance, that they are true copies of the entire record and proceedings of the board of county commissioners, or that they are true copies of any specified part thereof; that is, true copies of the proceedings of any particular meeting or of any particular page or pages of the original record of their proceedings. Each certificate states that the paper to which it is attached "is a true copy of all that pertains to the county tax levy," etc. In other words, the certifying officer, by his certificate, represents that he has passed judgment upon the records of the county commissioners, and has determined what parts of

the same relate to the county tax levies, and that he has included in the paper certified by him true copies of all of such parts of the record as he judged pertinent and relevant to the county tax levies. We know of no case where such a certificate has been sustained. The authority of an officer authorized to certify to copies of records and documents is limited to establishing *prima facie* that the paper which he certifies is a true copy of another writing. When so certified, if the record or document be one which under the statute may be proved by copy, it is admissible in evidence under the statute, but not otherwise. He is not clothed with authority to determine what the record or document relates or pertains to, or to pass judgment upon it in any way. The authorities are unanimous upon this point. In *McGuire* v. *Sayward,* 22 Me. 230, the court, in rejecting the certification of an official record as incompetent upon the ground that it was merely the statement of the certifying officer of what appeared in the record, said: "The law does not permit a recording or certifying officer to make his own statement of what he pleases to say appears by the record. What the record itself does declare is to be made known to the court by a duly authenticated copy of it; and upon it, and not upon what the officer may say that it declares, does the law authorize a court of justice to rely  The certificate in this case states the existence of a record; and yet, instead of a duly authenticated copy, there is only a statement of what the officer says will appear by an inspection of it. The law requires that the court before which it is produced should inspect and decide what it contains and proves, and not intrust that duty to a certifying officer." Similar language was used in *Doe ex dem. Foute* v. *McDonald,* 27 Miss. 610. The court said: "It is a mere certificate of the register that certain facts appear by the books in his office—a statement of his own conclusions from the facts stated in the books, and not a certified copy of the entry itself from the books." The certifying officer cannot certify that there are no other records, or to the nonexistence of facts. Under a statute of Georgia authorizing the use of certified copies, it was held that "an officer cannot certify to a fact. He can only certify a copy or transcript. His certificate to the nonexistence on his records of certain facts is therefore not admissible. He cannot show the absence of a particular fact from his records by a certificate to that effect. He must be sworn as any other witness. *Martin* v. *Anderson,* 21 Ga. 301; *Dillon* v. *Mattox,* 21 Ga. 113;

*Lamar* v. *Pearre,* 90 Ga. 377, 381, 17 S. E. 92; *Walker* v. *Logan,* 75 Ga. 759; *Miller* v. *Reinhart,* 18 Ga. 239; *Hines* v. *Johnson,* 95 Ga. 644, 23 S. E. 470." *Greer* v. *Fergerson* (Ga.) 30 S. E. 943. In *English* v. *Sprague,* 33 Me. 440, the court said: "A magistrate in order to say what a record contains, is not merely to certify what his construction of the record is. He must give a copy of it, that the court may judge of its import. His certificate that it contains any particular fact is never receivable as proof." In *Jay* v. *East Livermore,* 56 Me. 107, a paper certified to be a "true extract from the record" was rejected. A similar certificate of a deputy comptroller was condemned in *Wood* v. *Knapp* (N. Y.) 2 N. E. 632. The court said: "It is not the province of the deputy comptroller to determine what is or is not material to a question pending in a legal tribunal. He has power to certify to the correctness of copies of papers in the comptroller's office so as to make them evidence, but beyond this his certificate has no more effect than the opinion of any other person." In *Hanson* v. *South Scituate,* 115 Mass. 336, a certified copy of records was rejected on the ground that it "was simply a statement of what the certifying officer, under whose hand it was, deemed to be shown by them." The following authorities will be found to fully sustain the rule as stated in the cases already cited, and we know of none to the contrary: *Oakes* v. *Hill,* 14 Pick. 442; *Robbins* v. *Townsend,* 20 Pick. 345; *Wolfe* v. *Washburn,* 6 Cow. 261; *Jackson* v. *Miller,* 6 Cow. 752; *Childress* v. *Cutter,* 16 Mo. 24; *Byers* v. *Wallace,* 87 Texas 503, 28 S. W. 1056, 29 S. W. 760; *Drake* v. *Merrill,* 47 N. C. 368; *Goodrich* v. *Conrad,* 24 Iowa 254; *Davis & Co.* v. *Gray,* 17 Ohio St. 331; *Adams* v. *Weight,* 14 Wis. 442; *Tessman* v. *United Friends,* 103 Mich. 185, 61 N. W. 261; *Owen* v. *Boyle,* 15 Me. 147, 32 Am. Dec. 143; *Cooper* v. *Armstrong,* 4 Kan. 30; *Bemis* v. *Becker,* 1 Kan. 226; *Billingsley* v. *Hiles,* 6 S. D. 445, 61 N. W. 687; 1 Wharton's Law of Evid., sections 80, 120, 121; I Greenl. on Evi. (16th Ed.) section 498; 2 Jones' Law of Evi., sections 555, 556.

The reason for the rule which prohibits the custodian of public records from including in certified copies only such portion of the record as, in his opinion, are pertinent to a particular official act or fact, is, of course, that the relevancy of the parts of the record is for the court to determine. To hold otherwise would be to substitute the judgment of the certifying officer for that of the judicial tribunal in which the fact in controversy is to be determined. The

danger of any other rule is well illustrated by this case. The trial court, as will be noticed by reference to the fourth finding of fact, found that in 1897 there was a county levy in fact. It further found that the levy for that year was not based upon an itemized statement of county expenses for the ensuing year, or a statement of the outstanding indebtedness of the county, and was therefore void. Now, the only evidence offered to show that a statement of expenses and a statement of indebtedness were not made as required by law is the fact that no such statements appear in the certified copy offered in evidence, coupled with the auditor's certificate that the copy contains all that pertains to the county tax levy for 1897, and the oral testimony of plaintiff's counsel hereafter referred to. It is fair to assume that the absence of the statements from the certified copy controlled the trial court in its finding that the levy, which is complete in itself, was not based upon a statement of expenses and indebtedness. Accepting the copies as properly certified, the trial judge necessarily concluded, that if statements had been made, they would be in the copy, inasmuch as the certifying officer certified that it contained all that pertained to the county tax levy. In making the certificate the auditor merely expressed his opinion as to what pertains to a county tax levy. The fact is the county tax levy was complete in itself, as will appear by reference to the finding. If the levy is invalid, it is not because of the form in which it was made, but simply because of the failure of the board to perform an anterior act, namely the preparation of the statements. But the statements are no part of the levy. This was made clear by Bartholomew, J., in *Shuttuck* v. *Smith,* 6 N. D. 71, 69 N. W. 5, 10, in which he said: "While the levy must be based upon the itemized statement, such statement is no part of the levy. The two things are entirely distinct. They need not be made at the same sitting, or at the same session. The only part of the commissioners' record here introduced pertains to one sitting, and to the levy proper. I find nothing to negative the idea that a complete and technical itemized statement of county expenses for the ensuing fiscal year may not be found elsewhere in their records." Possibly the county auditor, in making these copies, was also of opinion that a copy of the record of the county tax levy would not properly include copies of the statements, and therefore did not include them. At any rate, the copy is no more than the opinion of the certifying officer. It hardly need be said that the

judgment of the county auditor cannot be substituted for that of the court. The copies were not certified as required by law. The exhibits must be rejected and the testimony disregarded. There is, then, no proof whatever tending to show the invalidity of the county tax levies for the several years in question. It is proper to say that in case the certificates showed that the copies were true copies of a specified part of the commissioners' record, or all of it, properly identifying the part of the original record copied, the exhibits would be admissible, and would not be rejected merely because the certifying officer had, after making a proper certificate, expressed his opinion as to what the record related to, and as to what facts did or did not appear in the record. As, for example, had the auditor certified that the copy was a true copy of pages 27 and 28 of the record, Book A of the County Commissioners' Record of Stutsman county for the year 1897, or by other suitable description, and then added a statement of his opinion as to the subject that the record related to, and that there was no other record or matter relating to that subject, in that event the extraneous recitals in the certificate would be suppressed, and the contents of the exhibit received as a true copy of the original record. But that is not this case. These certificates identify no part of the original record by book, page, or otherwise. The auditor merely certifies that the papers are true copies "of all that pertains to" the county levies. If, however, it were conceded that these copies are so certified that they may be properly admitted in evidence as proof of any part of the commissioners' proceedings, yet their admission would not avail the plaintiff, for the reason that after rejecting the opinion of the auditor as to what they pertain to, and his opinion that they contain all that relates to the county tax levies, there is no competent evidence that the records of the board do not elsewhere show a literal compliance with the statute. See *Shuttuck* v. *Smith, supra.*

The oral evidence of plaintiff's counsel as to the contents of the records of the county commissioners is equally objectionable. He testified, over objection, as follows: "I have carefully examined the records of the county commissioners pertaining to the levy of taxes in the years 1897, 1898, 1899 and 1900, and that those records do not contain anything in their matter pertaining to the levy of taxes in these years, except so far as the same appears from the certified copies of the tax levies which have been offered in evidence. The records do not contain anything to show that the

county tax levies in those years were based on an itemized statement or estimate of county expenses, or on a general statement of outstanding indebtedness of the county in those years, except so far as the same appears from the certified copies put in evidence." Defendant's counsel moved to strike out all of the above evidence "in regard to the record of the county commissioners on the ground that the same is incompetent, irrelevant, immaterial, and not the best evidence." The objection was well taken, and the evidence must be disregarded in this court. The evidence was objectionable on the ground that it was not the best evidence; that is, it is not the kind of evidence required to prove that facts which are required to be officially recorded do or do not exist. The witness was not the official custodian of the records. The records themselves are the best evidence both of what they do contain and what they do not contain. As we have seen, it was not competent for plaintiff's counsel to testify to what they contain, and it was equally incompetent for him to testify to what they do not contain. The rule stated in 2 Jones' Law of Evidence, section 556, is that where "it is necessary to prove facts collateral to the record, or that no document of a public character exists or is on file, or similar facts, the proper mode is not by statements in official certificates, but by the testimony of the officer." The rule which requires that proof of the absence of a record entry or document shall be furnished by introducing the record itself, or by the oral testimony of the custodian, is founded upon reasons of public policy, which require that the best evidence reasonably available to prove the fact shall be produced. The records themselves are, of course, the best evidence, and were available in this case. If they do not in fact contain the record of the proceedings which are essential to the validity of the tax sales, that fact could be made certain by a production of the records themselves. Where the records are of such a voluminous character (or other sufficient reason exists) that oral testimony is admissible to show the absence of any particular record or entry, it must ordinarily be given by the custodian or keeper of the records, and not by a stranger; and then only after a diligent examination is shown to have been made. The rule quoted from Jones' Law of Evidence appeals to us as sound, and it has the support of judicial opinion. In *Bullock* v. *Wallingford*, 55 N. H. 619, the court said: "When a party desires to prove the negative fact that there is no record, he must do so in the usual

way—by the deposition of the proper officer, or by producing him in court so that he may be sworn and cross-examined as to the thoroughness of the search made." *Stoner* v. *Ellis,* 6 Ind. 152, is to the same effect, and sustains the rule that proof of the absence of a record is to be made by the custodian's testimony "that upon diligent search the fact did not appear." See also, *Burton* v. *Driggs,* 20 Wall. 125, 22 L. Ed. 299; and *Smith* v. *Richards,* 29 Conn. 232.

The plaintiff has wholly failed to show the invalidity of the county or state tax levies, as well as the invalidity of the assessments. In this state it is the settled rule that the person attacking the validity of a tax or a tax sale must sustain the burden of his attack, or fail in his action. The presumption is that the tax is valid. In *Farrington* v. *Investment Company,* 1 N. D. 102, 45 N. W. 193, the court used this language: "Respondent attacks the validity of the tax, and the burden is upon him to establish its invalidity; and it is not enough, for the purposes of the case, that the court cannot be able to say from the evidence that the tax is valid. The presumption is that the tax is valid, and this presumption necessarily extends to every act upon which the tax in any measure depends. The court must be able, upon the evidence, to pronounce judgment against its validity." *Shuttuck* v. *Smith,* 6 N. D. 71. The rule established by the cases referred to is reinforced by section 78, c. 126, p. 286, Laws 1897. The result in this case does not involve a miscarriage of justice. Plaintiff is merely required to bear his share of the public burden.

The district court will reverse its judgment and enter judgment dismissing the action. All concur.